## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

SALVADOR PALACIOS,

       Plaintiff,

v.                                      CV 11-0584 MV/WPL

CORRECTIONS CORPORATION OF
AMERICA, and LEE VAUGHN,
*Warden of Cibola Correctional Center*,

       Defendants.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

Plaintiff Salvador Palacios, a federal prisoner currently housed in Cibola County Correctional Center ("Cibola"), in Milan, New Mexico, is a practicing Muslim. He brought suit alleging that Cibola's change of meal plan policy violates the United States Constitution and federal law. (Doc. 1.) Corrections Corporation of America ("CCA") and Lee Vaughn, Warden of Cibola, have filed a motion to dismiss. (Doc. 11.) Palacios responded in opposition and moved to consolidate his suit with that brought by another inmate (Doc. 14), which CCA and Vaughn oppose (Doc. 16). This matter has been referred to me to make findings of fact, conduct legal analysis, and recommend a final disposition (Doc. 6). I have reviewed the motions, responses, and relevant law, and I find that Palacios has stated one claim upon which relief may be granted while failing to state several others. I also find that Palacios's action may not be consolidated with one brought by another inmate. Therefore, I recommend that the Court grant in part and deny in part CCA and Vaughn's Motion to Dismiss and deny Palacios's motion to consolidate.

## BACKGROUND[1]

Palacios filed a complaint pursuant to 42 U.S.C. § 1983 alleging violations of his First and Fourteenth Amendment rights and the rights guaranteed by the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. 2000cc *et seq.* (2012). (Doc. 1 at 1.) His complaint also raises state tort claims of negligence and negligence per se. (*Id.*)

Palacios was advised in 2011 that Cibola was changing its dietary menu at the orders of the federal Bureau of Prisons ("BOP"). (*Id.* at 3.) Pursuant to BOP orders, only Jewish inmates would be eligible to receive kosher diets; alternatives available to Muslim inmates who had been receiving kosher diets would be the vegetarian diet or the pork-free mainline diet. (*Id.*) Palacios contends that this exclusion from the kosher diet violates his rights to equal protection and religious freedom. (*Id.* at 8.)

Palacios asserts that neither the vegetarian diet nor the mainline diet is fully consistent with the dictates of Islamic law. (*Id.* at 5-6.) He states that meat products are integral to Islamic dietary law because the slaughter of animals is extremely important to religious holidays including the conclusion of Ramadan. (*Id.* at 5.) Furthermore, pursuant to Islamic law, all food must be prepared and stored in a certain manner. (*Id.* at 5-6.) Finally, Islamic law also regulates the manner in which animals must live and be slaughtered. (*Id.* at 6.) Thus, he concludes, neither diet comports with the Halal diet. By contrast, kosher dietary requirements are virtually the same as those required by Islamic law and would be permissible for Muslims to eat. (*Id.* at 7.)

---

[1] For the purpose of a Rule 12(b)(6) motion to dismiss, I will accept all the well-pleaded allegations of Palacios's complaint as true, even if doubtful in fact, and construe the allegations in the light most favorable to Palacios. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Christy Sports, LLC v. Deer Valley Resort Co., Ltd.*, 555 F.3d 1188, 1191 (10th Cir. 2009) (citations omitted); *Park Univ. Enters. v. Am. Cas. Co.*, 442 F.3d 1239, 1244 (10th Cir. 2006).

Vaughn did advise Palacios that each Muslim inmate requesting a kosher diet could produce a written request that would be considered on an individual basis by the head office. (*Id.* at 3.) Palacios states that "they did" provide something in writing on the matter. (*Id.*)

Palacios requests that the Court grant equitable and monetary relief. As equitable relief, Palacios asks the Court to order Cibola to provide Palacios and other Muslim inmates with the kosher diet, to cease further discrimination, and to provide all Muslim inmates with religious material and publications including a Spanish edition of the Koran. (*Id.* at 9.) For monetary relief, Palacios requests any damages that the Court deems appropriate, including legal and filing fees. (*Id.* at 10.)

The Court reviewed Palacios' claims, demands, and the named Defendants to determine whether Palacios had stated claims upon which relief could be granted; dismissed several of the named Defendants, leaving only CCA and Vaughn; and ordered CCA and Vaughn to file an answer. (Doc. 8 at 2-3.)

CCA and Vaughn filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), asserting that Palacios cannot assert a claim pursuant to 42 U.S.C. § 1983 or RLUIPA because he is in federal, not state, custody. (Doc. 11 at 2-4.) CCA and Vaughn further argue that Palacios does not have an implied right of action pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), because he has not pled sufficient facts to establish that a kosher diet including meat is central to his religious beliefs or that any such beliefs have been substantially burdened by the BOP dietary policy. (*Id.* at 4-7.) Finally, CCA and Vaughn contend that Palacios's negligence claims fail because he has not established that they had a duty, either statutory or otherwise, to provide Palacios with a kosher diet. (*Id.* at 9.)

Palacios responded by filing a motion seeking to "join" his lawsuit with another action, *Pizano-Cornejo v. Vaughn et al.*, CV 11-857 BB/GBW, filed by Antonio Pizano-Cornejo, another inmate currently housed at Cibola. (Doc. 14.) Palacios asserts that he and Pizano-Cornejo have both been denied kosher diets (*id.*), but he includes no other information about Pizano-Cornejo. I have not received any filings from Pizano-Cornejo in this matter. In the same filing, Palacios also responds to CCA and Vaughn's motion to dismiss by urging that he has presented an actionable claim. (*Id.* at 3-4.) He states that CCA and Vaughn's refusal to provide him with a diet consistent with his religious beliefs constitutes a violation of his right to the free exercise of his religion under the First Amendment. (*Id.*)

CCA and Vaughn filed a response opposing Palacios's motion to join. (Doc. 16.) They state that Pizano-Cornejo, also a practicing Muslim, is a plaintiff appearing before a different court in a similar action involving the availability of a religious diet to Muslim adherents. (*Id.* at 2.) Construing the motion to join as a request for consolidation under Federal Rule of Civil Procedure 42(a), they argue that the circumstances surrounding the two cases are sufficiently different so as to advise against consolidation.

This matter is now before me on CCA and Vaughn's motion to dismiss, in which they contend that Palacios' remaining claims must be dismissed because they fail to state a claim upon which relief is available pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. 11), and on Plaintiff's motion to join (Doc. 14).

STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) authorizes a court to dismiss a complaint in whole or part for failing to state a claim upon which relief is available. In considering Rule 12(b)(6) motions, courts must look within the four corners of the complaint, accept all well-

4

pleaded factual allegations as true, and evaluate whether the plaintiff is plausibly entitled to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Issa v. Comp USA*, 354 F.3d 1174, 1177 (10th Cir. 2003) (citation omitted). In other words, the court may neither look beyond the complaint nor weigh the evidence. To survive a motion to dismiss, then, "[t]he allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief" under the relevant law. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).

Palacios is a pro se litigant. Accordingly, I construe his pleadings liberally and hold them to a less stringent standard than is required of a party represented by counsel. *See Weinbaum v. Las Cruces*, 541 F.3d 1017, 1029 (10th Cir. 2008) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)). Liberal construction requires courts to make some allowance for a pro se litigant's "failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements[.]" *Garrett v. Selby, Connor, Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (quoting *Hall*, 935 F.2d at 1110) (alterations omitted). However, "the court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record." *Id.*

## ANALYSIS

I. Form and Timeliness of Plaintiff's Response

As an initial matter, CCA and Vaughn point out that Palacios did not file a timely response to their April 24, 2012 motion to dismiss. (Doc. 16 at 5.) In fact, the only filing received from Palacios after that time was his July 3, 2012 motion seeking "joinder," in which Palacios reasserted the validity of his claims. (Doc. 14.) CCA and Vaughn argue that this motion for joinder should not be construed as a response to their motion to dismiss due to its

5

untimeliness. (Doc. 16 at 5-6). CCA and Vaughn further argue that Palacios's failure to file a timely response to their motion to dismiss establishes his consent to the dismissal of his claims. (*Id.* at 6.)

The Local Rules state that a complete failure to respond to a motion constitutes consent to grant the motion. D.N.M.LR-Civ. 7.1(b). However, the Tenth Circuit has held that "a district court may not grant a motion to dismiss for failure to state a claim 'merely because [a party] failed to file a response.'" *Issa*, 354 F.3d at 1177 (quoting *Reed v. Bennett*, 312 F.3d 1190, 1194 (10th Cir. 2002)) (alteration in original). Further, Palacios did in fact respond to several of CCA and Vaughn's assertions, and the fact that he did so in a "joinder" motion does not prevent the Court from construing the relevant passages as a response. *See Garrett*, 425 F.3d at 840. Therefore, I must determine whether Palacios has stated a claim upon which relief can be granted in spite of his failure to timely respond to CCA and Vaughn's motion to dismiss.

II.     Statutory Religious Exercise Claim

    a. **Religious Land Use and Institutionalized Persons Act**

Palacios asserts that RLUIPA applies to CCA and Vaughn because CCA is a contractor for the federal government. (*Id.* at 5.) RLUIPA states, in part, that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution" unless that burden meets certain restrictive criteria. 42 U.S.C. § 2000cc-1(a) (2012). For purposes of this provision, "institution" refers to facilities or institutions "owned, operated, or managed by, or provid[ing] services on behalf of any State or political subdivision of a State." *Id.* § 1997(1)(A). Further, the term "government" is defined for these purposes as meaning "a State, county, municipality, or other government entity created under the authority of a State." *Id.* § 2000cc-5(4)(A). Thus, Section 2000cc-1 applies only to persons confined to state or local

prisons whose religious exercise is burdened by state or local entities. *See Ish Yerushalayim v. U.S. Dep't of Corr.*, 374 F.3d 89, 92 (2d Cir. 2005).

By contrast, Palacios is confined to a private prison operated on behalf of the federal government, and he alleges that his religious exercise is burdened by prison employees acting under the color of federal authority. He is not confined to a state facility, and he makes no allegations against any state or local entity. Accordingly, Palacios has failed to state a claim for relief under RLUIPA.

**b.  Religious Freedom Restoration Act**

Despite the inapplicability of RLUIPA, the Religious Freedom Restoration Act (RFRA), 42 U.S.C. § 2000bb *et seq.* (2012), continues to provide a cause of action for federal prisoners alleging a burden on religious exercise imposed by federal government entities. *See Kikumura v. Hurley*, 242 F.3d 950, 959 (10th Cir. 2001). Because RFRA "mirrors the provisions" of RLUIPA in its application to institutionalized persons, the analysis of claims under the two "virtually identical" statutes is so similar that "courts commonly apply case law decided under RFRA to issues that arise under RLUIPA and vice versa." *See Lebron v. Rumsfeld*, 670 F.3d 540, 557 (4th Cir. 2012) (internal citation omitted); *see also United States v. Wilgus*, 638 F.3d 1274, 1289 (10th Cir. 2011) (finding caselaw interpreting a provision of RLUIPA relevant to clarifying the meaning of an identical provision of RFRA). As such, in light of Palacios's pro se status, I will liberally construe his RLUIPA claim as if it were properly filed as a RFRA claim. *See Garrett*, 425 F.3d at 840.

To establish a prima facie claim under the RFRA, Palacios must prove three elements: "(1) a substantial burden imposed by the federal government on a (2) sincere (3) exercise of religion." *Kikumura*, 242 F.3d at 960. RFRA relies on the RLUIPA definition of "religious

exercise," which includes "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." *See* 42 U.S.C. § 2000bb-2(4); *id.* § 2000cc-5(7)(A).

The recent Tenth Circuit case *Abdulhaseeb v. Calbone*, 600 F.3d 1301 (10th Cir. 2010), is particularly instructive. There, a Muslim prisoner at a privately operated state institution brought an RLUIPA action against employees of the institution alleging, among other claims, that the prison's dietary options violated the requirements of Islamic dietary laws. *Id.* at 1307. The institution provided two religious dietary options, a non-pork diet and a vegetarian diet. *Id.* The prisoner requested "a Halal diet that is consistent with my sincerely held Islamic dietary law," alleging that the available vegetarian and non-pork options "violate[d] the requirements of Halal Islamic dietary laws. I require a Halal diet . . . including meats and poultry raised . . . and slaughtered according to Islamic laws." *Id.* Like CCA and Vaughn here, the district court in *Abdulhaseeb* countered that the prisoner had not presented sufficient evidence that the available vegetarian and pork-free options were required by the Muslim religion. *Id.* at 1313. On that basis, the district court granted the defendants' summary judgment motion. *Id.*

The Tenth Circuit reversed the grant of summary judgment on that issue. *Id.* at 1319. First, the court held that the proper standard for determining whether the plaintiff was exercising his religious beliefs was not whether a Halal diet was required by the Muslim faith, but whether "the lack of a halal diet that includes meats . . . substantially burden's *Mr. Abdulhaseeb's* own exercise of his sincerely held religious belief." *Id.* at 1314. Second, the court noted that the defendants had not challenged the religious nature of the plaintiff's request or the sincerity of his beliefs. *Id.* at 1314-15. Third, the court recognized the existence of a genuine issue of fact as to whether the denial of a Halal diet substantially burdened the plaintiff's exercise of his sincerely-held religious beliefs. As the Tenth Circuit observed, "[i]t is a reasonable inference that [the

defendants'] failure to provide a halal diet either prevents [the plaintiff]'s religious exercise, or . . . present[s] him with a Hobson's choice – either he eats a non-halal diet in violation of his sincerely held beliefs, or he does not eat." *Id.* at 1316-17 (citing *Nelson v. Miller*, 570 F.3d 868, 879 (7th Cir. 2009)). Having established these circumstances, the court held that the prisoner had raised a genuine question of fact as to whether the defendants' practices substantially burdened the exercise of his religion. *Id.* at 1315-17.

The facts here bear strong similarity to those in *Abdulhaseeb*. As in that case, although Palacios focuses much of his complaint on the need for Halal-certified meats, his request for relief is simply to receive a religious meal plan. (Doc. 1 at 9.)[2] He maintains that a diet prepared according to Halal or kosher guidelines is integral to his own exercise of religion. *See Kikumura*, 242 F.3d at 960-61. Palacios also alleges that the available alternatives – like those in *Abdulhaseeb*, a vegetarian option and a non-vegetarian, non-Halal, pork-free option – do not satisfy his own Muslim beliefs.[3] Additionally, CCA and Vaughn do not appear to dispute that Palacios's request is pursuant to his personal religious convictions, and they do not appear to challenge the sincerity of these convictions. Finally, as in *Abdulhaseeb*, the plaintiff's exclusion from a religious diet "either prevents [his] religious exercise, or . . . present[s] him with a Hobson's choice" of either eating in violation of his sincerely held religious beliefs or not eating at all. *See Abdulhaseeb*, 600 F.3d at 1317; *see also Nelson*, 570 F.3d at 879 (finding a substantial

---

[2] Accordingly, I need not consider whether Palacios is merely entitled to "halal-certified meats in the context of a diet that otherwise is 'halal' in the sense of simply not being 'haram' [unlawful under Islamic dietary guidelines]." *Abdulhaseeb*, 600 F.3d at 1313. Instead, I consider whether Palacios is entitled to "a [kosher]-certified diet that includes [kosher]-certified meats." *Id.*

[3] Neither the Defendants here nor I can determine that these alternatives should satisfy Palacios's religious beliefs. *See Abdulhaseeb*, 600 F.3d at 1314 n.7; *see also Nelson*, 570 F.3d at 881 ("It simply is not appropriate for a prison official to argue with a prisoner regarding the objective truth of a prisoner's religious belief."); *Mosier v. Maynard*, 937 F.2d 1521, 1523 (10th Cir. 1991) ("Intrafaith differences are common and cannot be resolved by secular courts.").

burden when a religious adherent is forced to make "an improper choice between adequate nutrition and the tenets of his faith" (citation omitted)).

Although *Abdulhaseeb* was brought under RLUIPA, the Tenth Circuit's analysis of what constitutes a "substantial burden" on religious exercise under RFRA is substantially similar to its test for a "substantial burden" under RLUIPA. *Compare Werner v. McCotter*, 49 F.3d 1476, 1480 (10th Cir. 1995) (finding a RFRA substantial burden when the government actor (1) "significantly inhibit[s] or constrains conduct or expression"; (2) "meaningfully curtail[s] a prisoner's ability to express adherence to his or her faith"; or (3) "den[ies] a prisoner reasonable opportunities to engage in" religious activities[4]), *with Abdulahseeb*, 600 F.3d at 1315 (finding a RLUIPA substantial burden when the government actor "(1) requires participation in an activity prohibited by a sincerely held religious belief, or (2) prevents participation in conduct motivated by a sincerely held religious belief, or (3) places substantial pressure on an adherent either not to engage in conduct motivated by a sincerely held religious belief or to engage in conduct contrary to a sincerely held religious belief"). Given the two statutes' "virtually identical" language, along with the RFRA's reliance on definitions found in RLUIPA, it follows that facts indicating a "substantial burden" under RLUIPA would also constitute such a burden under RFRA.

Accordingly, I find that Palacios has established a prima facie claim under RFRA that CCA and Vaughn have substantially burdened the exercise of a sincerely held religious belief.[5]

---

[4] Although *Werner* required that the activities substantially burdened be "fundamental" to religion, the Tenth Circuit has recognized that RLUIPA relaxed this standard for RFRA. *See Grace United Methodist Church v. City of Cheyenne*, 427 F.3d 755, 793-97 (10th Cir. 2005) (citing *Kikumura*, 242 F.3d at 960-61).

[5] At this stage of proceedings, I must accept all well-pleaded factual allegations as true in order to determine whether Palacios is plausibly entitled to belief. *See Iqbal*, 556 U.S. at 678. At trial, Palacios will need to establish that he seeks to engage in activities that constitute the exercise of a sincerely held religious belief and that CCA and Vaughn enforce policies that substantially burden this exercise.

Such a claim, although established plausibly, can nonetheless be denied if CCA and Vaughn can justify the burden "by establishing a sufficiently compelling interest and showing that it could not accommodate religion more without serving that interest less." *U.S. v. Friday*, 525 F.3d 938, 946 (10th Cir. 2008) (citing 42 U.S.C. § 2000bb-1(b)). CCA and Vaughn did not address these factors in its motion to dismiss, and the burden to establish these factors is theirs. *See* 42 U.S.C. § 2000bb-1(b). Therefore, Palacios has a plausible statutory claim for relief, and I recommend that the Court deny CCA and Vaughn's motion to dismiss with respect to this claim.

III. Constitutional Claims

a. **Section 1983**

When a person acting "under color of state law" deprives a citizen of any "rights, privileges, or immunities secured by the Constitution and laws[,]" 42 U.S.C. § 1983 provides a remedy. *Monroe v. Pape*, 365 U.S. 167, 172, 184-87 (1961). Consequently, a § 1983 suit must be premised on a wrongdoing perpetrated by an actor "clothed in the authority of state law." *Id.* at 184. Actors clothed in the authority of federal law are instead governed by the standards set forth in the *Bivens* line of cases. *See* 403 U.S. at 397.

It is undisputed that Palacios is a federal inmate and that Cibola is a privately-run facility operating under BOP authority to house federal inmates. (Doc. 1 at 1-2; Doc. 11 at 2-3.) Palacios does not allege that CCA and Vaughn are state actors, nor could he. Accordingly, Palacios may not proceed with his First or Fourteenth Amendment claims under § 1983.

b. *Bivens* **First Amendment Claim**

Although Palacios may not proceed with a § 1983 action, *Bivens* and § 1983 actions are functionally identical, except for the replacement of a state actor under § 1983 with a federal actor under *Bivens*. *Van Strum v. Lawn*, 940 F.2d 406, 409 (9th Cir. 1991); *see also Iqbal*, 556

U.S. at 675-76 (explaining that *Bivens* actions are the "federal analog" to § 1983 actions); *Dodds v. Richardson*, 614 F.3d 1185, 1197-98 (10th Cir. 2010) (citing the Supreme Court's position in *Iqbal* and adding that "[t]his statement alone adds nothing new to our law or that of our sister circuits"). Because pleadings by pro se litigants are liberally construed, this Court will not deem a cause of action waived simply because the litigant mistook § 1983 for its identical federal counterpart. With that resolved, I move to the merits of the motion to dismiss Palacios's First Amendment claim under *Bivens*.[6]

### i.    Recent caselaw under Bivens

In *Bivens*, the Supreme Court implied a private right of action for monetary damages based on the alleged violation of a constitutionally protected interest by a federal official. *See* 403 U.S. at 397; *see also Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001). Although the Supreme Court recognized two causes of action under *Bivens* after that case was decided, in every relevant case since 1980 the Court has limited the permissible causes of action under *Bivens* and the types of actors against whom such claims can be made. *See Minneci v. Pollard*, 565 U.S. ----, 132 S. Ct. 617, 621-23 (2012) (reviewing decisions since 1978 on the scope of *Bivens* actions).

The Court recently observed that no *Bivens* action will lie where there is an "'alternative, existing process' capable of protecting the interests at stake." *Minneci*, 565 U.S. at ----, 132 S. Ct. at 623 (quoting *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007)). Specifically, the Court held that a *Bivens* action against private employees of a privately operated federal prison was

---

[6] Because federal action and actors are alleged, rather than state action and actors, I find that Palacios may not proceed with his Fourteenth Amendment claim under *Bivens*, and I recommend that the Court dismiss this claim with prejudice.

precluded because prisoners in that case had an alternative legal remedy, as the prisoners had the option of bringing a state tort action against the employees. *Id.*

Overall, the line of relevant cases since *Bivens* illustrates that "implied causes of action [like *Bivens*] are disfavored" and are rarely, if ever, expanded. *See Iqbal*, 556 U.S. at 675. The Tenth Circuit has long recognized this reluctance to expand *Bivens* liability. *See Beattie v. Boeing Co.*, 43 F.3d 559, 564 (10th Cir. 1994).

### ii.   Bivens *claim against CCA*

In *Malesko*, the Court identified the core purpose of *Bivens*, which "is to deter individual federal officers from committing constitutional violations." 534 U.S. at 70. As one corollary to that purpose, no implied right of action can be brought against a private corporation acting under color of federal law. *Id.* at 70-72.

In the instant matter, Palacios is seeking an award of monetary damages against CCA for violations of the First Amendment's religious exercise clause. However, CCA is a private corporation acting under the color of federal law. Accordingly, I find that Palacios does not have an implied right of action against CCA for his First Amendment claim, and I recommend that the Court dismiss this claim with prejudice.

### iii.   Bivens *claim against Vaughn*

Palacios is also seeking an award of monetary damages against Vaughn under the Free Exercise Clause of the First Amendment. Although the Supreme Court has not expressly ruled out all *Bivens* claims against privately employed personnel working at privately operated federal prisons, let alone such actions under the Free Exercise Clause, this does not necessarily mean the action may proceed. First, claims against privately employed personnel at privately operated federal prisons are disallowed when an alternative legal remedy exists to vindicate the claim

sought under *Bivens*. *See Minneci*, 565 U.S. at ----, 132 S. Ct. at 623, 626; *see also Wilkie v. Robbins*, 551 U.S. 537, 550 (2007). Second, even when legal alternatives do not exist, such claims can be denied in the presence of "special factors counseling hesitation before authorizing a new kind of federal litigation." *Wilkie*, 551 U.S. at 550 (quoting *Bush v. Lucas*, 462 U.S. 367, 378 (1983)). Finally, neither the Supreme Court nor the Tenth Circuit has expressly ruled on the viability of *Bivens* actions premised on the Free Exercise Clause.

I have already found that Palacios has properly stated a prima facie RFRA claim against Vaughn.[7] Although that analysis did not consider the scope of relief available to Palacios, there is reason to believe that a claim for monetary damages against Vaughn under the RFRA may be available to Palacios. It is true that principles of sovereign immunity would likely prevent a plaintiff from pursuing monetary damages against a governmental defendant under the RFRA. *See Jama v. U.S.I.N.S.*, 343 F. Supp. 2d 338, 373 (D.N.J. 2004); *see also Lane v. Pena*, 518 U.S. 187, 192 (1996) (requiring waivers of sovereign immunity to be "unequivocally expressed in statutory text"). Nonetheless, the prospects of monetary damages from non-governmental defendants under the RFRA are not ruled out, even when such individuals are "acting under color of law," as sovereign immunity principles would not appear to apply. *See Jama*, 343 F. Supp. 2d at 373 (finding monetary damages to be appropriate relief against individual defendants under the RFRA); *cf. Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 686-90 (1949) (recognizing that federal officials sued in their individual capacities are not immune from suit).

---

[7] Although the New Mexico Tort Claims Act ("NMTCA"), N.M. STAT. ANN. § 41-4-1 *et seq.* (2012), also appears to provide an alternative legal remedy for prisoners against governmental entities in New Mexico and their employees, that Act only covers actions against state or local governmental entities and employees. *Id.* § 41-4-3(B), (F). Thus, I find that the NMTCA does not provide an alternative legal remedy for Palacios against CCA and Vaughn.

However, even in the absence of an alternative remedy, there is no indication that a *Bivens* action under the Free Exercise Clause should be recognized, and several indications that it should not. Although the Supreme Court has not expressly ruled on the propriety of such actions, it has expressed skepticism of such claims. *See Iqbal*, 556 U.S. at 675 (noting that although the "[p]etitioners [did] not press the argument," the Court's "reluctance [to expand *Bivens*] might well have disposed of respondent's First Amendment claim of religious discrimination"); *see also Patel v. Bureau of Prisons*, 515 F.3d 807, 813 n.6 (8th Cir. 2008) ("We have never found a *Bivens* action to extend to a Free Exercise claim, and it is doubtful that we would do so."). In the absence of a Tenth Circuit opinion expressly recognizing a Free Exercise Clause claim under *Bivens*, and in the presence of such deeply skeptical language from the Supreme Court, I do not believe that such a claim can proceed.

Palacios may have a monetary remedy against Vaughn under the RFRA, and at any rate, there is no reason to believe that a *Bivens* free-exercise action against him should be recognized (and plenty of reason to believe to the contrary). Accordingly, and without having to consider whether "special factors" counsel against recognizing the claim, I recommend that the Court dismiss Palacios's *Bivens* claim against Vaughn with prejudice.[8]

---

[8] At least one jurisdiction has expressed doubt that any *Bivens* claim could be brought against private persons acting under color of federal authority, regardless of the availability of alternative legal remedies. *See Holly v. Scott*, 434 F.3d 287, 291 (4th Cir. 2006). The Tenth Circuit has not reached this issue. Because Palacios may have an alternative legal remedy against Vaughn, and because there is reason to refuse to recognize a Free Exercise *Bivens* claim against him, there is no need to consider the question at this time.

IV.    <u>Tort Claims</u>[9]

### a.  Negligence Per Se

To state a claim for negligence per se, a plaintiff must establish four factors:

(1) there must be a statute which prescribes certain actions or defines a standard of conduct, either explicitly or implicitly, (2) the defendant must violate the statute, (3) the plaintiff must be in the class of persons sought to be protected by the statute, and (4) the harm or injury to the plaintiff must generally be of the type the legislature through the statute sought to prevent.

*Heath v. La Mariana Apartments*, 180 P.3d 664, 667 (N.M. 2008) (citation omitted).

Palacios does not allege that any statute or regulation requires CCA or Vaughn to provide him with a kosher meal, nor that CCA or Vaughn violated such a statute or regulation. Therefore, I recommend the dismissal with prejudice of Palacios's claim of negligence per se.

### b.  Negligence

"It is axiomatic that a negligence action requires that there be a duty owed from the defendant to the plaintiff; . . . the defendant breached that duty; and that the breach was a cause in fact and proximate cause of the plaintiff's damages." *Romero v. Giant Stop-N-Go of N.M., Inc.*, 212 P.3d 408, 410 (N.M. Ct. App. 2009).

The Tenth Circuit "recognizes that prisoners have a constitutional right to a diet conforming to their religious beliefs." *Beerheide v. Suthers*, 286 F.3d 1179, 1185 (10th Cir. 2002). Palacios alleges that CCA and Vaughn have not provided him with a halal or kosher diet for over a year (Doc. 14 at 3), thus depriving him of this constitutional right. However, Palacios

---

[9] It is not clear under what statute Palacios intends to bring these claims. As noted earlier, the New Mexico Tort Claims Act only covers actions against state and local government entities. Further, while the Federal Tort Claims Act only applies against the United States, its agencies, and "corporations primarily acting as instrumentalities or agencies of the United States," it does not apply to "any contractor with the United States." 28 U.S.C. § 2671 (2012). Because I find that Palacios does not have a negligence or negligence per se claim against CCA or Vaughn regardless of the statute providing jurisdiction, I do not address the means by which Palacios could plausibly bring such an action.

does not plead sufficient facts to establish that it was the actions and policies of CCA and Vaughn, as opposed to other actors like BOP, that caused this deprivation. In fact, he refers to statements to the contrary by Cibola officials, who tell him that BOP required this change in policy at Cibola. (*See* Doc. 1 at 3-4.)  Although Palacios reasons that BOP is not responsible for this change based on his understanding of what happens in other BOP-run institutions (*Id.* at 5), he does not plead sufficient facts to establish this claim. Therefore, Palacios cannot demonstrate that CCA and Vaughn proximately caused the alleged deprivation. Accordingly, I find that Palacios may not proceed with his negligence claim.

V.   Joinder/Consolidation

Finally, Palacios requests that this Court allow him to "join" an existing action in the District of New Mexico brought by Pizano-Cornejo against Vaughn and other defendants. When multiple actions already exist before the same district and "involve a common question of law or fact," the appropriate motion is one for consolidation under Federal Rule of Civil Procedure 42(a). I will therefore construe Palacios's motion for joinder as one requesting consolidation.

Under Rule 42 and similar rules, "the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966). Still, "the paramount objective of consolidation is the accomplishment of great convenience and economy in the administration of justice," *Barcelo v. Brown*, 78 F.R.D. 531, 536 (D.P.R. 1978), and a motion to consolidate will be measured against the degree to which it accomplishes this objective. Further, "[t]he party moving for consolidation bears the burden of proving that

consolidation is desirable." *Servants of Paraclete, Inc. v. Great Am. Ins. Co.*, 866 F. Supp. 1560, 1572 (D.N.M. 1994).

Concerns arise when two parties seeking to consolidate their actions are both pro se prisoners. First, even when prisoners are housed in the same facility, coordination between the two "would presumably be difficult in light of restrictions on interpersonal communication within a detention facility." *See Pinson v. Whetsel*, No. CIV-06-1372-F, 2007 WL 428191, at *1 (W.D. Okla. Feb. 1, 2007) (noting the difficulties in having each prisoner plaintiff sign each jointly filed document). Additionally, "inmates are subject to transfer at any time to a facility other than the one where they are currently incarcerated," which can further complicate such coordination. *See Torrez v. Corr. Corp. of Am.*, No. CV 09-2298-PHX-MHM, 2010 WL 320486, at *1 (D. Ariz. Jan. 20, 2010); *see also Osterloth v. Hopwood*, No. CV 06-152-M-JCL, 2006 WL 3337505, at *3 n.4 (D. Mont. Nov. 16, 2006) ("If one inmate is moved during the course of the litigation, the court may find itself in the position of ordering prison officials to allow co-plaintiff inmates to correspond with each other, in derogation of a facially valid and legitimate prison policy.") Such litigation also raises concerns that pro se prisoner plaintiffs might be seeking to impermissibly provide legal assistance to each other in pursuing their claims. *See, e.g.*, *Cotner v. Hopkins*, 795 F.2d 900, 902 (10th Cir. 1986) ("[A] plaintiff must assert his own constitutional rights."); *see also Adams v. James*, 784 F.2d 1077, 1080 (11th Cir. 1986) (holding that pro se inmates may not assert the interests of other pro se inmates).

The Tenth Circuit has not addressed the question as to whether prisoner plaintiffs may be joined in an action. *See Woodruff v. Wyoming*, 49 F. App'x 199, 202 n.1 (10th Cir. 2002) (unpublished). Still, in light of these and other concerns, several courts have refused to allow multiple-inmate actions to proceed. *See, e.g.*, *Hubbard v. Haley*, 262 F.3d 1194, 1197-98 (11th

Cir. 2001) (noting that the Prison Litigation Reform Act requires *in forma pauperis* prisoner plaintiffs to each pay a $350 filing fee, thus indicating a congressional desire to deter excessive prisoner litigation and to prevent multiple inmates from pursuing an action together in order to share costs). This Court retains discretion as to whether such a consolidation motion should be granted or denied. *See Shump v. Balka*, 574 F.2d 1341, 1344 (10th Cir. 1978).

Palacios requests consolidation of his action with Pizano-Cornejo's in order to "provide each other support in the presentation of their case and court[-]require[d] filings." (Doc. 14 at 3.) Such is not the purpose of Rule 42(a), and in fact such a goal triggers concerns that the prohibition against pro se prisoners representing each other might be violated if consolidation were granted. Further, although not dispositive, there is an issue present in Pizano-Cornejo's action regarding the exhaustion of administrative remedies that is not in dispute in this action. (Doc. 16 at 3.) Finally, and not insignificantly, Palacios has presented no evidence that Pizano-Cornejo wants his case consolidated with this one. Pizano-Cornejo has not moved for consolidation, and Palacios has not provided the Court with any affidavits or other statements from Pizano-Cornejo indicating a desire to do so. Nor am I aware of any filings to this effect by Pizano-Cornejo in his own action.

In light of these factors, as well as the other significant complications and burdens inherent in multiple-prisoner litigation, it is unlikely that the consolidation of Palacios and Pizano-Cornejo's actions would further the interests of convenience and judicial economy. Accordingly, I recommend that Palacios's motion for consolidation be denied.

### RECOMMENDATION

For the foregoing reasons, I recommend that CCA and Vaughn's Motion to Dismiss (Doc. 11) be granted with respect to Palacios's § 1983/*Bivens*, negligence, and negligence per se

claims; as such, I recommend that these claims be dismissed with prejudice. I further recommend that the Court construe Palacios's RLUIPA claim as a claim under RFRA and that CCA and Vaughn's Motion to Dismiss be denied with respect to this claim. Finally, I recommend that Palacios's Motion for Consolidation (Doc. 14) be denied.

> **THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the Proposed Findings and Recommended Disposition. If no objections are filed, no appellate review will be allowed.**

_____
William P. Lynch
United States Magistrate Judge

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any *pro se*
party as they are shown on the Court's docket.

20