IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SALVADOR PALACIOS,

    Plaintiff,

v.                                              CV 11-0584 MV/WPL

CORRECTIONS CORPORATION OF
AMERICA, and LEE VAUGHN,
*Warden of Cibola Correctional Center*,

    Defendants.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

Salvador Palacios, a prisoner incarcerated at Cibola County Correction Center ("Cibola") in Milan, New Mexico, filed a complaint alleging that Cibola's change of meal plan policy violates federal law. (Doc. 1.) Corrections Corporation of America ("CCA") and Lee Vaughn have filed a *Martinez* report in which they ask the Court to dismiss Palacios's remaining claim based on, *inter alia*, his failure to exhaust administrative remedies. (Doc. 21 at 4-12.) This matter has been referred to me to make findings of fact, conduct legal analysis, and recommend a final disposition. (Doc. 6.) Having considered the relevant law, along with the *Martinez* report, Palacios's response (Doc. 22), and CCA and Vaughn's reply (Doc. 23), I find that Palacios failed to exhaust his remedies as required under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a) (2006). Therefore, I recommend that the Court dismiss Palacios's claim without prejudice.

**FACTUAL AND PROCEDURAL BACKGROUND**

Because this is a summary judgment motion, the Court must construe the facts in the light most favorable to Palacios. *See Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1312 (10th Cir. 2009) (citation omitted). Unless otherwise indicated, the facts described herein are not in dispute.

Aside from meals offered to prisoners with medical restrictions, Cibola offers "essentially three" different dietary plans to its prisoners: a pork-free mainline diet, a vegetarian diet, and a kosher diet. (Doc. 21 at 2.) Palacios, a practicing Muslim, was placed on the kosher diet plan in March 2010. (Doc. 21 Ex. 3 at 6; Doc. 21 Ex. 3 Att. G.) Palacios considers this diet to be acceptable to Muslims in the absence of a Halal dietary plan, as he believes that kosher dietary requirements are virtually the same as those provided for by Islamic law. (Doc. 1 at 7.)

On or around June 17, 2011, Palacios was advised that Cibola was changing its policies so that only Jewish prisoners would be eligible for the kosher diet, while other prisoners (including Muslim prisoners) would be required to choose between the mainline and vegetarian plans. (*Id.*) Palacios asserts that neither alternative is fully consistent with the dictates of Islamic law. (*Id.* at 5-6.) He says that meat products are integral to Islamic dietary law because the slaughter of animals is extremely important on religious holidays, including the conclusion of Ramadan. (*Id.* at 5.) Further, Islamic law regulates the manner in which animals must live and be slaughtered. (*Id.* at 6.) Finally, pursuant to Islamic law, all food must be prepared and stored in a certain manner. (*Id.* at 5-6.) Accordingly, Palacios contends that his exclusion from the kosher dietary plan violates his right to religious freedom. (*Id.* at 8.)

Vaughn advised Palacios that each Muslim prisoner requesting a kosher diet could produce a written request that would be considered on an individual basis by the head office. (*Id.* at 3.) On June 26, 2011, Palacios submitted an Inmate Request to Staff Form requesting to be

added to "the new kosher diet," noting that he was a Muslim and that he had been on "the old kosher diet." (Doc. 21 Ex. 3 Att. M.) The responding staff member referred Palacios to the facility chaplain. (*Id.*)

Palacios had the option of filing an informal grievance with respect to his removal from the kosher dietary plan. (Doc. 21 Ex. 3 Att. A at 5-6.) Instead, four days after submitting the Inmate Request to Staff Form and receiving a response to same, Palacios filed the complaint in this action. (Doc. 1 at 1.) In his complaint, Palacios alleges violations of, *inter alia*, the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc *et seq*. (*Id.*) Palacios requests both equitable and monetary relief. (*Id.* at 9-10; *see also* Doc. 17 at 3.)

The Court reviewed Palacios's complaint *sua sponte* and dismissed several claims and defendants, determining that these claims provided no bases upon which relief could be granted. (Doc. 8.) CCA and Vaughn, the only Defendants left in this action, then filed a motion to dismiss the remaining claims against them. (Doc. 11.) The matter having been referred to me (Doc. 6), I recommended that the Court dismiss all of Palacios's claims against CCA and Vaughn except for that brought under RLUIPA, which I recommended the Court construe as a claim under the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb *et seq.* (Doc. 17). I also recommended that the Court deny Palacios's request to consolidate his case with one brought by another prisoner. (*Id.* at 17-19.) The Court adopted these recommendations. (Doc. 18.)

After CCA and Vaughn filed their answer (Doc. 19), I ordered them to submit a *Martinez* report responding to Palacios's claim and providing all relevant information (Doc. 20). In that Order, I informed the parties that the information presented in the *Martinez* report and any responses thereto could be used in determining whether to award summary judgment to either party. (*Id.*) CCA and Vaughn then filed their *Martinez* report, in which they assert that Palacios

failed to exhaust all available administrative remedies as required by the PLRA. (Doc. 21 at 4-12.) CCA and Vaughn also cite caselaw from outside the Tenth Circuit to argue that Palacios's RFRA claim should fail on the merits. (*Id.* at 12-14.)

In his response, Palacios contends that he appropriately exhausted his administrative remedies, and he reasserts the merits of his RFRA claim. (Doc. 22.) CCA and Vaughn also filed a reply in which they again argue that Palacios failed to avail himself of Cibola's grievance process and that Palacios has not met his burden of establishing a prima facie RFRA violation. (Doc. 23.)

### STANDARD OF REVIEW

Summary judgment is appropriate where the pleadings, discovery materials, and affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). A fact is "material" if, under the governing law, it could have an effect on the outcome of the lawsuit, and the dispute is "genuine" if a rational jury could find in favor of the nonmoving party on the evidence presented. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citations omitted). In determining whether a plaintiff meets this two-part test, this Court must "construe the facts in the light most favorable to the plaintiff as the nonmoving party." *Thomson*, 584 F.3d at 1312 (citing *Scott v. Harris*, 550 U.S. 372, 378 (2007)). In ruling on a summary judgment motion, the Court may neither make credibility determinations nor weigh the evidence. *Gossett v. Oklahoma*, 245 F.3d 1172, 1175 (10th Cir. 2001) (quotation marks omitted).

For purposes of summary judgment, a prisoner's complaint is treated as an affidavit if it alleges facts based on his personal knowledge and has been sworn under penalty of perjury. *Hall*,

935 F.2d at 1111 (citation omitted). A *Martinez* report is also treated as an affidavit, and this report and the supporting documents can be used in determining whether to grant summary judgment if the report's statements are based on personal knowledge and sworn under penalty of perjury. *Id.* A court cannot resolve material disputed factual issues by accepting a *Martinez* report's findings when they are in conflict with pleadings or affidavits. *Id.* at 1109. However, conclusory allegations without specific supporting facts have no probative value and cannot create a genuine issue of fact. *See Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1143 (10th Cir. 2005); *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1237 (10th Cir. 2004); *Ledoux v. Davies*, 961 F.2d 1536, 1537 (10th Cir. 1992). As is true with all affidavits, statements of mere belief must be disregarded. *Argo v. Blue Cross & Blue Shield*, 452 F.3d 1193, 1200 (10th Cir. 2006).

Finally, as with all pleadings filed by pro se individuals, I liberally construe the allegations contained in Palacios's complaint and his response to the *Martinez* report. *Northington v. Jackson*, 973 F.2d 1518, 1520-21 (10th Cir. 1992) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)). However, the Court must apply the same legal standards applicable to pleadings drafted by counsel. *Id.*

## ANALYSIS

CCA and Vaughn assert that Palacios failed to exhaust all available administrative remedies and that he has failed to establish a violation of the RFRA. (Doc. 21.) Palacios states that he properly exhausted his available remedies and that any untimely grievances were the result of CCA and Vaughn's delays in responding to his complaints. (Doc. 22 at 3.) Palacios also argues that he has met his burden of showing an RFRA violation. (Doc. 22 at 4-8.) However, because I find that Palacios has failed to satisfy the PLRA's exhaustion requirements, I do not reach the merits of his RFRA claim.

The PLRA prohibits any prisoner from bringing an action regarding prison conditions until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a); *see also Porter v. Nussle*, 534 U.S. 516, 524 (2002) (recognizing that exhaustion is required for any suit challenging prison conditions, regardless of the cause of action). Because Congress has specifically mandated exhaustion of administrative remedies, the Court cannot waive this requirement, even if the remedy sought is not actually available to the prisoner through the administrative process. *Booth v. Churner,* 532 U.S. 731, 739 (2001) (citing *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992)). A prisoner must properly complete the full administrative review process set by the facility's grievance policy in order to exhaust administrative remedies. *See Jones v. Bock*, 549 U.S. 199, 218 (2007) (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)); *Little v. Jones*, 607 F.3d 1245, 1249 (10th Cir. 2010) ("[A]n inmate may only exhaust by properly following all of the steps laid out in the prison system's grievance procedure." (citing *Woodford*, 548 U.S. at 90)). A prisoner's failure to exhaust administrative remedies is an affirmative defense, *see Jones*, 549 U.S. at 216, that the defendant bears the burden of establishing, *see Roberts v. Barreras*, 484 F.3d 1236, 1240-41 (10th Cir. 2007) (citations omitted).

The administrative grievance procedure at Cibola is governed by CCA Policy 14-5, Inmate/Resident Grievance Procedures. (*See* Doc. 21 Ex. 3 (affidavit of James Pike).) According to this policy, a prisoner with a complaint must first submit an Informal Resolution Form, Form 14-5A, to a member of unit management. (Doc. 21 Ex. 3 Att. A at 5-6.) If the prisoner is not satisfied with the unit management team's response, he may submit an Inmate/Resident Grievance Form, Form 14-5B, to the facility's grievance officer. (*Id.* at 6, 8.) The grievance officer forwards Form 14-5B to the appropriate staff member, and the responding individual

either delivers his response directly to the prisoner or forwards the response to the grievance officer for such delivery. (*Id.* at 8-9.) A prisoner wishing to appeal this response must then fill out the Inmate Resident Appeal section of Form 14-5B and resubmit it to the grievance officer, who will then forward the appeal to the warden. (*Id.* at 10.) The warden delivers his response to the prisoner in person or through the grievance officer. (*Id.*) Additional policies govern further appeals to the Bureau of Prisons. (Doc. 21 Ex. 3 Att. E; *see also* Doc. 21 Ex. 3 Att. B at 3-4.)

Only one document dated prior to the June 30, 2011 commencement of Palacios's action makes any reference to Cibola's decision to remove Palacios from the kosher diet plan. On June 26, 2011, Palacios filed an Inmate Request to Staff Form requesting inclusion in the "new kosher diet," and a staff member responded that day by recommending that Palacios speak to the chaplain. (Doc. 21 Ex. 3 Att. M.) However, it does not appear that Palacios grieved this issue in accordance with CCA Policy 14-5 before filing the complaint in this action. The Inmate Request to Staff Form is not mentioned in the grievance policy, and it is not part of the grievance process at Cibola. (Doc. 21 Ex. 3 Att. A; *see also* Doc. 21 Ex. 3 Att. B at 2-3 (describing Inmate Request to Staff Forms as part of the "problem resolution" process, as distinguished from forms used as part of "inmate grievance procedures").) Nor were any grievance forms filed by Palacios in the intervening four days between the submission of the Inmate Request to Staff Form and the filing of this lawsuit. Accordingly, Palacios cannot claim that this document served to exhaust his administrative remedies before he filed the instant lawsuit.

Palacios apparently used Cibola's grievance procedures on one occasion to complain of his removal from the kosher diet. On August 6, 2012, Palacios submitted Form 14-5A complaining about the dining hall cook's provision of food for Muslim prisoners. (Doc. 21 Ex. 3 Att. R.) Dissatisfied with the staff response to this complaint, Palacios submitted Form 14-5B

alleging numerous dietary violation, including the termination of his "religious diet." (Doc. 21 Ex. 3 Att. S.) The responding staff member addressed some of the issues Palacios raised, but he did not discuss Palacios's removal from the kosher meal plan. (Doc. 21 Ex. 3 Att. T.) Although Palacios appealed this response, he did not directly discuss his removal from the kosher meal plan in his appeal, and the warden did not address that matter. (*Id.*) Palacios did not appeal this decision further, and there are no other documents indicating that the matter was ever raised again through the administrative grievance process.

Even assuming (without deciding) that Palacios fully grieved the issue of his removal from the kosher diet plan, his lawsuit is nonetheless barred. The plain language of the PLRA states that an action with respect to prison conditions may not be brought by a prisoner "*until* such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (emphasis added). All of the circuits that have addressed the issue have read this language to mean that administrative remedies must be exhausted before a lawsuit is filed; exhaustion after the complaint has been filed, but before the case has been decided, is insufficient. *See Gonzalez v. Seal*, 702 F.3d 785 (5th Cir. 2012); *Johnson v. Jones*, 340 F.3d 624, 627-28 (8th Cir. 2003); *McKinney v. Carrey*, 311 F.3d 1198, 1199-1200 (9th Cir. 2002) (per curiam); *Medina-Claudio v. Rodriguez-Mateo*, 292 F.3d 31, 36 (1st Cir. 2002); *Neal v. Goord*, 267 F.3d 116, 121-22 (2d Cir. 2001), *overruled on other grounds*, *Porter*, 534 U.S. 516; *Jackson v. District of Columbia*, 254 F.3d 262, 269 (D.C. Cir. 2001); *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999); *Perez v. Wis. Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999).

While it does not appear that the Tenth Circuit has addressed the issue in a published decision, it has repeatedly agreed with this principle in unpublished caselaw. *See, e.g.*, *Snyder v. Harris*, 406 F. App'x 313, 316-17 (10th Cir. 2011) (unpublished) (citing *Johnson*, 340 F.3d at

8

627); *Hayward v. Brill*, 163 F. App'x 667, 668-69 (10th Cir. 2006) (unpublished) (citing *McKinney*, 311 F.3d at 1199); *Peoples v. Gilman*, 109 F. App'x 381, 383-84 (10th Cir. 2004) (unpublished). In particular, the court has recognized that the filing of a grievance after a lawsuit has commenced "defeats the purpose" of the PLRA's exhaustion requirement. *Peoples*, 109 F. App'x at 383. Accordingly, the clear trend in persuasive caselaw convinces me that Palacios's claim should be dismissed for failure to exhaust administrative remedies.

Palacios did not exhaust his available administrative remedies before filing his complaint, and any exhaustion that occurred after the complaint was filed is insufficient to satisfy the PLRA. I therefore recommend that the Court dismiss Palacios's remaining claim.

## CONCLUSION

Palacios did not fully exhaust his administrative remedies pertaining to his claim against CCA and Vaughn before filing the instant lawsuit. Accordingly, I recommend that the Court dismiss Palacios's claim against CCA and Vaughn. Because dismissals for failure to exhaust are typically without prejudice, *see Patel v. Fleming*, 415 F.3d 1105, 1109 (10th Cir. 2005) (citations omitted), I recommend that such dismissal be without prejudice.

> **THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the Proposed Findings and Recommended Disposition. If no objections are filed, no appellate review will be allowed.**

_____
William P. Lynch
United States Magistrate Judge